ALLISON SCOTT (Bar No.205989)
Allison.Scott@huschblackwell.com
HUSCH BLACKWELL LLP
355 South Grand Avenue., Suite 2850
Los Angeles, CA 90071
Telephone: 213.337.6550
Facsimile: 213.337.0651

KATHY HUYNH (Bar No. 233314)
Kathy.Huynh@huschblackwell.com
HUSCH BLACKWELL LLP
1999 Harrison Street, Suite 1300
Oakland, CA 94612
Telephone: 510.768.0650
Facsimile: 510.768.0651

Attorneys for Defendant
MASS. ELECRIC CONSTRUCTION CO.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRAIG CORTES, an individual on behalf of herself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MASS. ELECTRIC CONSTRUCTON CO., a Delaware corporation; CODY LAVENDER, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>*(Removed from Contra Costa Superior County Superior Court Case No. C25-00736)*<br><br>**DEFENDANT MASS. ELECRIC CONSTRUCTION CO.'S NOTICE OF REMOVAL**<br><br><br><br>Complaint Filed:   March 13, 2025<br>Removal filed:      April 21, 2025 |

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Mass Electric Construction Co. ("MECC" or "Defendant") by and through its counsel, invoke this Court's jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and remove this action from the Superior Court of the State of California for the County of Contra Costa. As grounds for removal, Defendant states as follows:

### STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this Action under two grounds: (i) jurisdiction pursuant to the Class Action Fairness Act and (ii) federal question.

2. Under CAFA, a defendant has a right to remove a state court action to a federal district court where the district has original jurisdiction over the action. 28 U.S.C. § 1441. "The district courts shall have original jurisdiction over any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332 (d)(2)(A). The district courts have original jurisdiction where the proposed class involves 100 or more members or where the primary defendants are not States, State Officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

3. Further, the federal question statute grants this Court original jurisdiction over this Action because issues directly implicate two federal statutes, Section 301 of the Labor Management Relations Act of 1974 ("LMRA") and the National Labor Relations Act of 1935 ("NLRA"). 28 U.S.C. § 1332(a). Here, the employment of Plaintiff is governed by the terms of valid collective bargaining agreements. The claims cannot be adjudicated without interpreting the terms of the collective bargaining agreements, which are governed under the LMRA and the NLRA.

4. Venue for this action lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1441 because this is the judicial district in which the action was filed and where the case is pending.

///

///

**PROCEDURAL BACKGROUND**

5. On March 13, 2025, Plaintiff Craig Cortes ("Plaintiff") filed a civil complaint against the Defendants in the Superior Court of the State of California for the County of Contra Costa, *Criag Cortes v. Mass. Electric Construction Co.,* Case No. C25-00736 (the "Complaint" or "*MECC*"). Plaintiff's Complaint sets forth the following causes of action: (1) failure to pay minimum wages; (2) failure to pay wages and overtime Under Labor Code § 510; (3) Meal period liability under Labor code § 226.7; (4) Rest-Break Liability Under Labor Code §226.7; (5) Violation of Labor Code §226 (a); (6) Violation of Labor Code § 203; (7) Failure to keep required payroll records under labor Code §§1174 and 1174.5; and (8) Violation of Business & Professions Code §17200 *et seq*. ("UCL").

6. Plaintiff served the Summons and Complaint and all of the other related court documents on Defendant on March 20, 2025. Copies of the Notice of Service, the Summons, Complaint, and all other related court documents received by Defendant are attached to this Notice of Removal as **Exhibit A.**

7. Pursuant to 28 U.S.C. §1446(b)(2)(A), all defendants who have been properly joined and served must join in or consent to the removal of the action. Defendant is informed and believes that individual defendant Cody Lavender has not been served with the Complaint as of the date of this filing. Accordingly, Cody Lavender is not required to join in or consent to this Notice of Removal at this time.

8. On April 18, 2025, Defendant filed an Answer to Plaintiff's Complaint in State Court. A copy of the Answer is attached to this Notice of Removal as **Exhibit B**.

9. The undersigned counsel certifies that a copy of this Notice of Removal and all supporting documents will be served on Plaintiff's counsel and filed with the Clerk of the Contra Costa County Superior Court, as required by 28 U.S.C. § 1446(d).

10. This Notice of Removal has been filed within thirty (30) days after the Defendants were served with a copy of the Summons and Complaint upon which this action is based. This Notice of Removal therefore is filed within the time period provided by 28 U.S.C. § 1446(b).

# CLASS ACTION FAIRNESS ACT

**A.    Jurisdiction Pursuant to the Class Action Fairness Act.**

11. Under CAFA, a defendant has a right to remove a state court action to a federal district court where the district has original jurisdiction over the action. 28 U.S.C. § 1441.

12. "The district courts shall have original jurisdiction over any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332 (d)(2)(A).

13. The district courts have original jurisdiction where the proposed class involves 100 or more members or where the primary defendants are not States, State Officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

**B.    Diversity of Citizenship Under the Class Action Fairness Act.**

14. Under CAFA, diversity of citizenship is met when any member of the class is a citizen of a state different from any defendant. 28 U.S.C. § 1332 (d)(2)(a).

15. Citizenship of the parties is determined by their citizenship status at the commencement of the action. 28 U.S.C. § 1332(d)(7).

16. A corporation is a citizen of any state where it is incorporated and where its principal place of business is located. 28 U.S.C. § 1332(c).

17. A corporation's principal place of business is determined by the "nerve center" test, which looks to where the corporation maintains its corporate headquarters and where the corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 90-94 (2010).

18. Plaintiff is a citizen of the state of California. As set forth in the Complaint, Plaintiff worked for Defendant in California and he "resides in California." Compl. ¶ 4. Accordingly, Plaintiff is a citizen of California for purposes of determining diversity. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled).

19. Defendant MECC is a Delaware corporation and has its principal place of business in Massachusetts.

20. Defendant Cody Lavender's citizenship can be ignored because of CAFA's minimal diversity requirements.

21. Accordingly, Plaintiff is a citizen of California and Defendant MECC is a citizen of Delaware and Massachusetts.

22. CAFA's minimal diversity of citizenship requirement is satisfied.

**C.  Amount in Controversy Under the Class Action Fairness Act.**

23. Pursuant to CAFA, the amount in controversy must exceed the value of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332 (d)(2).

24. In determining whether the amount in controversy exceeds $5,000,000, "'a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 554 (2014)).  Evidence establishing the amount is only required when the plaintiff contests, or the court questions, the defendant's allegation. *Dart*, 135 S.Ct. at 554.

25. In measuring the amount in controversy, a court must assume that the plaintiff will prevail on each of his/her claims. *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaints, not what a defendant will actually owe." (quotation omitted)).

26. Here, the Complaint is silent as to the amount in controversy for each claim, and Defendant must only make a plausible allegation of the amount in controversy.  Defendant denies that it owes Plaintiff or the putative class members any of the damages alleged in his Complaint.  However, based on Plaintiff's allegations, Plaintiff has placed more than $5 million at issue in this lawsuit.

*(i)     Plaintiff's Proposed Class*

27. Plaintiff's proposed class consists of the "all current and former employees within the State of California, who at any time from four (4) years prior to the filing of this lawsuit, are or were employed as non-exempt hourly employees by Defendants…" Compl. ¶1.

28.     During the class period, Defendant employed more than 100 non-exempt employees in California. More specifically, over the entire period, Defendant employed approximately 1,494 non-exempt employees in California.

29.     During the class period, the average regular wage rate for the Class Members was approximately $54.82 per hour, and these Class Members worked approximately 56,506 work weeks.

### (ii)    *Unpaid Minimum Wages*

30.     Plaintiff alleges, "Defendants, at times, failed to pay Class Members, or some of them, minimum wages for all hours worked." Plaintiff further alleges, "Defendants, and each of them, have intentionally and improperly changed, adjusted and/or modified the hours of Class Members, which resulted in off the clock work and underpayment of all wages owed to Class Members over a period of time, while benefiting Defendants." Compl. ¶ 46.

31.     Plaintiff seeks to recover "the unpaid minimum wages (including double minimum wages), liquidated damages in an amount equal to the minimum wages unlawfully unpaid, interest thereon and reasonable attorney's fees and costs of suit pursuant to California Labor Code§ 1194(a)." Compl. ¶ 57.

32.     Conservatively assuming a single violation (*i.e.* one hour of unpaid worktime per workweek, based on the average hourly rate of $54.82 per hour, and assuming a total of approximately 45,237 workweeks during the 3-year limitations period, the alleged unpaid wages associated with this claim would be **$2,570,366** ($56.82 x 45,237 = $2,570,366). The liquidated damages sought by this claim are equal to the unpaid wages **$2,570,366**.

33.     Based on the foregoing conservative estimates, the total amount in controversy for Plaintiff's first cause of action is at least **$5,140,732**.

### (iii)    *Meal Breaks*

34.     California law dictates the number, length, and timing of meal periods that employers must provide. Cal. Lab. Code § 512(a). For every meal period that an employer fails to provide in accordance with the requirements of the labor code or applicable wage orders, the employer must

pay one additional hour of pay at the employee's regular rate of compensation. Cal. Lab. Code § 226.7(c).[1]

35. Plaintiff alleges that "Defendants, at times, failed to provide Class Members, or some of them, with meal periods as required under the Labor Code. Defendants placed their needs over Class Members lawful meal breaks and this resulted in Class Members consistently having to work through their scheduled meal breaks because the demands of the job would not avail them the opportunity to take a lawfully uninterrupted and off-duty meal break. Furthermore, upon information and belief, on the occasions when Class Members worked more than ten (10) hours in a given shift, they did so without receiving a second uninterrupted thirty (30) minute meal period as required by law." Compl. ¶ 68.

36. Plaintiff further alleges that "Defendants thus failed to provide Class Members with meal periods as required by the Labor Code, including by not providing them with the opportunity to take meal breaks, by providing them late or for less than thirty (30) minutes, or by requiring them to perform work during breaks." Compl. ¶ 69.

37. Plaintiff fails to explicitly indicate how often Defendant failed to provide meal periods within the first five (5) hours of work. Given Plaintiff's allegations, it is reasonable to assume that Plaintiff claims Defendant provided either a short or a late first meal period on at least one shift per workweek in which the employees worked five shifts or more of five hours or more.[2] During the relevant time period, the Class Members worked approximately 56,506 workweeks of five or more shifts of five or more hours and those employees earned an approximate average hourly rate of $54.82. Thus, Plaintiff's third cause of action places **$3,097,658** in controversy. (56,506 workweeks x $54.82 = $3,097,658).

---

[1] Plaintiff's alleged class period begins four years prior to filing this action. The statute of limitations for meal period violations is three years. Cal. Civ. Pro. § 338. However, Plaintiff also alleges that the violations he asserts in claims one through seven of his Complaint (which includes his meal period claim) constitute unfair and unlawful business practices under California Business and Professions Code § 17200, *et seq.*, which has a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. Plaintiff seeks injunctive relief and restitution as provided under California Business and Professions Code § 17200, *et seq.* Accordingly, a four-year time period is considered for the purposes of assessing the amount in controversy for claims three and four.

[2] Defendant conservatively uses a rate of violation of at least one shift per week.

### *(iv) Rest Periods*

38. Like meal periods, California law dictates the number, length, and timing of rest periods that employers must provide for their employees. IWC Order 16-2001, § 11(A).

39. Also, like meal periods, for every rest period that an employer fails to provide in accordance with the requirements of the labor code or applicable wage orders, the employer must pay one additional hour of pay at the employee's regular rate of compensation. Cal. Lab. Code § 226.7(c).

40. Plaintiff alleges that "Defendants, at times, failed to provide Class Members, or some of them with timely rest breaks of not less than ten (10) minutes for each consecutive four (4) hour shift. Defendants placed their needs over Class Members lawful rest breaks and this resulted in Class Members consistently having to work through their scheduled rest breaks because the demands of the job would not avail them the opportunity to take a lawfully uninterrupted and off-duty rest break. Thus, Class Members, or some of them, were consistently denied of their rest breaks." Compl. ¶ 74.

41. Given Plaintiff's allegations, it is reasonable to assume that Plaintiff claims Defendant failed to provide at least one duty-free rest period on at least one shift per workweek in which Plaintiff worked five shifts or more of 3.5 hours or more. During the relevant time period, the Class Members worked approximately 56,506 such workweeks and those employees earned an approximate average hourly rate of $54.82 during those workweeks. Thus, Plaintiff's fourth cause of action places **$3,097,658** in controversy. (56,506 workweeks x $54.82 = $3,097,658).

### *(v) Final Wages Not Timely Paid*

42. If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

43. A three-year statute of limitations applies to a worker's claim for "waiting time" penalties (without an accompanying claim for unpaid wages) for late payment of final wages under Cal. Lab. Code § 203; *Pineda v. Bank of America, N.A.,* 50 Cal. 4th 1389, 1392 (2010).

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE., SUITE 2850, LOS ANGELES, CA 90071
(213) 337.6550

44. No controlling law provides how such "wages" constituting the penalty are to be calculated. Plaintiff will argue that penalty wages should generally include all forms of compensation regularly received, including, for example, vacation pay and nondiscretionary bonuses. Employers may argue that the penalty wages must be computed by reference to daily straight-time pay. *Mamika v. Barca,* 68 Cal. App. 4th 487, 493 (1998) ("the critical computation required by section 203 is the calculation of a daily wage rate").

45. Plaintiff alleges "Defendants failed, at times, to pay these Class Members all wages due and certain at the time of termination or within seventy-two (72) hours of resignation." Compl. ¶ 88. Plaintiff further alleges, "The wages withheld, at times, from these Class Members, or some of them, by Defendants remained due and owing for more than thirty (30) days from the date of separation from employment." Compl. ¶ 89.

46. Given the foregoing allegations, it is reasonable to assume that Plaintiff alleges each employee who left Defendant's employ was owed unpaid minimum wages of one or more hours.

47. Based on an average hourly rate of $54.82, the average daily wage of the putative class members is $438.56 ($54.82 x 8 hours) and the total penalty with respect to each proposed class member is $13,156.8 ($438.56 x 30 days).

48. Accordingly, the total amount placed in controversy by Plaintiff's sixth cause of action is at least **$16,353,902** [$13,156.80 x 1,243 employees (1,243 former employees during the 3-year limitations period)].

*(vi)* ***Plaintiff's Request for Attorneys' Fees***

49. Further, Plaintiff's Complaint alleges a claim for "attorneys fees." Compl. p. 27, ¶ 15.

50. Ninth Circuit law firmly establishes that statutory attorneys' fees will be included as a basis for determining the jurisdictional amount in controversy. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).

51. Ninth Circuit law permits the inclusion of attorneys' fees equal to 25% of the potential recovery, based on the benchmark rate for reasonable attorneys' fees awards in class actions. *See Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013).

52. Given the calculations described above, Plaintiff places at least **$27,689,950** in controversy before adding attorneys' fees. Thus, Plaintiff's request for attorneys' fees places an additional **$6,922,487** in controversy. (25% x $27,689,950 = $6,922,487).

53. The Class Members' claims place far more than $5,000,000 in controversy. Without considering Plaintiff's second cause of action for failure to pay overtime wages, fifth cause of action for wage statement violations, seventh cause of action for failure to keep required payroll records, and eighth cause of action for unfair competition, Plaintiff's first, third, fourth, and sixth causes of action alone place at least **$27,689,950** in controversy. Moreover, Plaintiff's claim for attorneys' fees on those four causes of action alone places an additional **$6,922,487** in controversy, for a total of **$34,612,437** in controversy.

## FEDERAL QUESTION JURISDICTION EXISTS

54. This Court has original subject matter jurisdiction in this Action under 28 U.S.C. § 1331, and removal is proper under 28 U.S.C. §§ 1441 and 1446 because this Action raises issues that directly implicate questions of federal law, specifically the LMRA and the NLRA.

55. The LMRA, which is codified as Title 29 U.S.C. sections 141-187, provides in Section 301 that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or with regard to the citizenship of the parties." 29 U.S.C. § 185(a). Section 301 applies "beyond cases specifically alleging contract violation to those whose resolution is substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract." *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (*en banc*; internal citations omitted); *see also Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir. 1993) (Section 301 preempts a state law claim "if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement"). Section 301 preempts "state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016).

///

56. Here, during the time period at issue, MECC was a party to the Phillips 66 California Refineries project labor agreement ("PLA"), which incorporates by reference a Collective Bargaining Agreement with Local Union 302 International Brotherhood of Electrical Workers and National Electrical Contractors Association, Inc. (collectively, "CBAs"), that governed the hours of work, rates of pay, and other conditions related to the employment relationship between MECC and Plaintiff. *See* attached **Exhibits C and D**.

57. Section 301 of the LMRA preempts Plaintiff's Second, Third and Fourth Causes of Action, because resolution of his claims will require interpretation of the CBAs in place during the relevant time period. Specific provisions of the CBAs that will require interpretation include, without limitation, Collective Bargaining Agreement - Article III (Hours – Wage Payments Working Conditions) and PLA Sections 4 (Wages and Benefits) and 7 (Hours of Work, Overtime, Shifts and Holidays). *See Id.* Additionally, Plaintiff's Fifth, Sixth, Seventh and Eighth Causes of Action are wholly derivative of his Second, Third and Fourth Causes of Action for overtime, meal period and rest break claims.

58. Moreover, Section 301 of the LMRA preempts Plaintiff's state law claims because California overtime law does not apply to an employee working under a qualifying collective bargaining agreement. *See Curtis v. Irwin Indus., Inc.,* 913 F.3d 1146, 1150 (2019) (citing Cal. Lab. Code. § 514).

59. To the extent that Plaintiff has not specifically pled that his claims require interpretation of the applicable CBA, he attempts to "artfully plead" his claim. This is improper and cannot defeat Section 301 preemption. *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997 (9th Cir. 1987).

60. Accordingly, this Court has original jurisdiction over Plaintiff's causes of action.

## CONCLUSION

Accordingly, the parties are diverse, the proposed class includes more than 100 individuals, no Defendant is a State, State Official or other governmental entity, and the Class Members' claims place far more than $5,000,000.00 in controversy. Furthermore, this matter is also subject to the original jurisdiction of the Court, under 28 U.S.C. section 1331. For these reasons, this case is

1 | properly removed to this Court.

2

3 | Dated: April 21, 2025                     HUSCH BLACKWELL LLP

4

5 |                                           By: /s/ Allison Scott
                                              ALLISON SCOTT
6 |                                           KATHY HUYNH

7 |                                           Attorneys for Defendant
                                              MASS. ELECTRIC CONSTRUCTION CO.
8

## PROOF OF SERVICE

*Craig Cortes v. Mass Electric Construction Co., et al.*
U.S. District Court Northern District of California Case No.

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 355 S. Grand Ave., Suite 2850, Los Angeles, CA 90071.

On April 21, 2025, I served true copies of the following document(s) described as **DEFENDANTS MASS. ELECRIC CONSTRUCTION CO.'S NOTICE OF REMOVAL** on the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 21, 2025, at Los Angeles, California.

/s/*Crystal Rose*
CRYSTAL ROSE